IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MUIR and BRADLEY
STOCK, on Behalf of
Themselves and All Others
Similarly Situated,

               Plaintiffs,

      v.

GUARDIAN HEATING AND COOLING
SERVICES, INC., ROBERT LANGE,
and ANDREA LANGE,

               Defendants.

Case No. 16 C 9755

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Conditional Class Certification, Disclosure of Potential Opt-In Plaintiffs' Contact Information, and Court-Approved Notice [ECF No. 10] (the "Motion").

For the reasons stated herein, the Motion is granted in part. Office-staff employees of Guardian are excluded from the collective because Plaintiffs have not made a modest factual showing that they were victims of the challenged policies. The Court directs Defendants to provide Plaintiffs, by no later than March 27, 2017, the names and the last known addresses, phone numbers, email addresses, and dates of employment for all potential opt-ins. The Court authorizes Plaintiffs to transmit

the notice and consent form to all potential members of the collective by U.S. mail, email, and a posting in an employee-only area of Guardian's facility where notices are typically displayed. The Court denies Plaintiffs' request for notice via website and text message. The opt-in period shall be sixty (60) days from the date notice is mailed and posted.

## I. <u>BACKGROUND</u>

Plaintiffs Michael Muir and Bradley Stock are former hourly employees of Guardian Heating and Cooling Services, Inc. ("Guardian"). Guardian is a provider, installer, and servicer of heating equipment and air conditioners in the Chicago, Illinois area. Since January 1, 2008, Defendant Robert Lange has been Guardian's sole shareholder, officer, and director. (ECF No. 13 ("Defs.' Mem.") at 2.) His wife, Andrea, is Guardian's office manager. (Defs.' Mem., Ex. 10 ¶ 3.) Guardian employs approximately 10 to 15 full-time and part-time employees across three job categories: office staff, installers, and service representatives. (*Id.*; ECF No. 1 ("Compl.") ¶ 42.) Office staff and installers commence their workdays at the Guardian facility, located at 3916 North Central Park Avenue in Chicago. Installers then typically depart the Guardian facility in a company service vehicle to make service calls and visit job sites. So too service representatives, although they may elect

instead to drive a company vehicle from their place of residence to their first job of the day. (Defs.' Mem. at 2, 9.) All Guardian employees operate on the honor system when turning in their time. (*Id.* at 2.) Both Muir and Stock are former Guardian service representatives.

To remedy practices that allegedly undercompensate employees for overtime work, Plaintiffs filed an Individual and Collective Action Complaint against Guardian, Robert Lange, and Andrea Lange under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.;* the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.;* and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1, *et seq.* (Muir also asserts an individual retaliation claim based on his raising FLSA wage claims with Defendant Robert Lange.)

Plaintiffs ask the Court to certify conditionally this class as a collective action under the FLSA, and require Defendants to produce the names of all potential opt-ins and accommodate Court-supervised notice. Plaintiffs define the putative collective as follows:

> All employees of Defendant failed to pay overtime wages based on the following circumstances[:] 1) Employees who[] worked through lunch; 2) Employees not paid for overtime work time at the end of the work day[;] 3) Employees not paid for overtime work time for time spent on the phone conducting phone consultations off-hours[;] 4) Employees not paid for

overtime work time for time spent commuting to job sites.

(Pls.' Mem. at 2.)  The proposed collective includes within its ambit all persons employed by Guardian at any time from October 15, 2013 through the date on which final judgment is entered in this action and who timely file (or have already filed) a written consent under 29 U.S.C. § 216(b).  (*See, id.*)

## II.  <u>LEGAL STANDARD</u>

Under the FLSA, plaintiffs may bring a collective action on behalf of themselves "and other employees similarly situated" to recover unpaid overtime compensation.  29 U.S.C. § 216(b).  To participate, an individual "must affirmatively opt-in to the suit by filing a written consent with the court." *Alvarez v. City of Chicago,* 605 F.3d 445, 448 (7th Cir. 2010).  This opt-in requirement replaces the procedure for ordinary class actions, which falls under FED. R. CIV. P. 23.  *See, Acevedo v. Ace Coffee Bar*, *Inc.,* 248 F.R.D. 550, 553 (N.D. Ill. 2008).

Because neither Congress nor the Seventh Circuit has established a detailed framework governing conditional certification or notice, "district courts have wide discretion to manage collective actions." *Sylvester v. Wintrust Fin. Corp.,* No. 12 C 1899, 2013 WL 5433593, at *2 (N.D. Ill. Sept. 30, 2013) (internal quotation marks omitted).  As such, courts in this district have fashioned a two-step process for

- 4 -

evaluating conditional certification. At the first stage, plaintiffs must show that there are similarly situated employees who are potential claimants. *Russell v. Ill. Bell Tel. Co.,* 575 F.Supp.2d 930, 933 (N.D. Ill. 2008); *see, Petersen v. Marsh USA, Inc.,* No. 10 C 1506, 2010 WL 5423734, at *2 (N.D. Ill. Dec. 23, 2010). To meet this burden, plaintiffs must make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Terry v. TMX Fin. LLC,* No. 13 C 6156, 2014 WL2066713, at *2 (N.D. Ill. May 19, 2014) (citing *Russell,* 575 F.Supp.2d at 933). "Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Molina v. First Line Sol'ns LLC,* 566 F.Supp.2d 770, 786 (N.D. Ill. 2007). The Court "evaluates the record before it, including the defendant's oppositional affidavits." *Rottman v. Old Second Bancorp, Inc.,* 735 F.Supp.2d 988, 990 (N.D. Ill. 2010). (The second stage, in which the court evaluates whether "sufficient similarity [exists] between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis," occurs after discovery and

completion of the opt-in process. *Russell,* 575 F.Supp.2d at
933; *see, Sylvester,* 2013 WL 5433593 at *3.)

Upon a showing that other putative opt-ins are similarly
situated, the Court will conditionally certify the action and
may allow notice of the case to the similarly situated
employees. *Hudgins v. Total Quality Logistics, LLC,* No. 16 C
7331, 2016 WL 7426135, at *3 (N.D. Ill. Dec. 23, 2016) (citation
omitted). Whether a proposed form of notice is adequate and
appropriate depends on potential opt-ins "receiving accurate and
timely notice concerning the pendency of the collective action,
so that they can make informed decisions about whether to
participate." *Hoffman-La Roche Inc. v. Sperling,* 493 U.S. 165,
170 (1989).

## III. <u>DISCUSSION</u>

Plaintiffs argue that all putative notice recipients were
subjected to the policies and procedures indicated in the
proposed collective definition and described in more detail in
Plaintiffs' Complaint and Plaintiff Muir's affidavits. The
Complaint, for example, alleges that "Defendants['']
agents . . . was *[sic]* informed that sometimes employees in the
field cannot take lunch, thus the time had to be paid." (ECF
No. 1 ("Compl.") ¶ 24.) In his first affidavit, Muir asserts
that many of Guardian's 10 to 15 employees "are similarly

situated to me as they worked through lunch without pay, were not paid for call times on off-hours, not paid for all travel time." (Pl.'s Mem., Ex. 1, ¶ 6.) Muir avers that this unpaid work time was overtime work, that all similarly situated employees of Guardian "were paid on an hourly basis, just like me," and that he is aware of no installer or service employee who is paid a salary. (*Id.* ¶¶ 7-8.) He specifically names the following Guardian employees as similarly situated: Javier Lopez, Adam Haynes, and "Kevin" (whose last name he does not know). (*Id.* ¶ 21.)

Defendants, on the other hand, argue against certification on a number of grounds. First, Defendants contend that the members of Plaintiffs' proposed collective are not similarly situated because Guardian installers, office staff, and service representatives were subjected to different sets of policies. (Defs.' Mem. at 8-9.) Second, Defendants claim that the uses of company vehicles at issue here fall within the Portal-to-Portal Act (*see, id.* at 9-10), which exempts certain activities from the pay mandates of the FLSA, including those "which are preliminary to or postliminary to" principal activities and occur "either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity."

29 U.S.C. § 254(a)(2). Third, Defendants claim that Guardian sufficiently compensates an "on call" employee for off-hours time spent on the phone by paying her an additional $50 per week. (Defs.' Mem. at 10-11.) Last, they stress that Muir was a "rogue employee" who "violated every company rule." (*Id.* at 6.)

Defendants submitted a series of affidavits from several current (and one former) Guardian employees as well as from Defendants Robert and Andrea Lange. As relevant, these affidavits variously state that Guardian has paid each employee's overtime and describe a lunch policy whereby 30 minutes of daily time is deducted for lunch (unless an employee receives prior approval and indicates on her time chart that no lunch was taken). In particular, former service representative Javier Lopez, one of the three individuals whom Muir names as similarly situated, avers that Guardian instructed employees to take a lunch break, that employees were to indicate the same on their time cards, and that he was paid for all the days and hours that he worked (including proper overtime pay). (Defs.' Mem., Ex. 4, ¶¶ 4-6.) Elizabeth Rzymowski, a current Guardian office employee in charge of payroll, states that Muir was paid all the overtime indicated on his time cards and that Muir was deducted one-half hour for lunch when he did not receive company approval to work through lunch or when his claims of working

through lunch were "not verifiable." (*Id.,* Ex. 3, ¶¶ 7-8.)  In addition, Defendant Andrea Lange submits in her affidavit that, based on review of company vehicle GPS records, Muir used a Guardian company vehicle for personal matters, did not properly account for his time on several occasions, and may have taken at least partial lunch breaks on days when he indicated "No Lunch" on his time card. (*See, generally, id.*, Ex. 10.)  With respect to Plaintiff Stock, Defendants claim that he was paid for time or overtime whenever he would work through a lunch period. (*Id.* at 4-5.)

## A. Similarly Situated

Whether certification of the requested collective is appropriate turns on the extent to which all putative opt-in claimants were similarly situated victims of common policies alleged to be unlawful.  Courts find plaintiffs to be similarly situated "despite some variations in their job duties" when it is clear that they have the "same essential responsibilit[ies]." *Jirak v. Abbot Labs.,* 566 F.Supp.2d 845, 848 (N.D. Ill. 2008). What is more, plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay.  *See, id.* at 849 (citation omitted). Concerns regarding a lack of common facts among potential class members and the need for individualized inquiries should be

raised at step two, not step one. *See, e.g., Lukas v. Advocate Health Care Network & Subsidiaries,* No. 14 C 2740, 2014 WL 4783028, at *3 (N.D. Ill. Sept. 24, 2014) (citations omitted). Defendants enjoy "the opportunity to argue that individualized determinations predominate at the second step of the certification process." *Anyere v. Wells Fargo, Co., Inc.,* 09 C 2769, 2010 WL 1542180, at *3 (N.D. Ill. Apr. 12, 2010) (citation omitted).

A corollary of the two-step process is that credibility determinations are improper at the first stage, "and the evidence of Defendants' policy may not be accepted over Plaintiffs' contrary evidence." *Jankuski v. Health Consultants, Inc.,* 2012 WL 6055596 (N.D. Ill. Dec. 5, 2012); *see also, Russell,* 575 F.Supp.2d at 935 ("[T]he mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime."). This assumes particular importance where the plaintiffs claim that a *de jure* employer policy was *de facto* ignored or enforced on different terms. *See, DeMarco v. Northwestern Memorial Healthcare,* No. 10 C 397, 2011 WL 3510905, at *3 (N.D. Ill. Aug. 10, 2011).

### 1. Lunch Breaks

Whereas office staff take a designated 30-minute unpaid lunch period, installers and service representatives – because they are often at job sites or in transit between them – may take their lunch at any time during the day. (*Id.* at 2-3 & Ex. 1 ¶ 13.) Defendants maintain that installers and service representatives who wish to work through lunch must first receive approval. Muir's first affidavit states that Guardian consistently failed to pay him and other employees when they worked through lunch and that he repeatedly confronted Robert Lange about this issue. (ECF No. 5 ("Pls.' Mem."), Ex. 1 ¶¶ 23-24.) Muir further avers that he was often too busy to take lunch breaks, that marking "No Lunch" on timecards was futile because of Defendants' *de facto* unwillingness to suspend the lunch deduction, and that he was deducted 30 minutes for lunch even when he marked "No Lunch" on his timecard. (*See, e.g.,* ECF No. 15 ("Pl.'s Reply"), Ex. 3 ¶¶ 14-46.)

These statements in Muir's affidavits, coupled with his allegation of other individuals similarly situated and his specific naming of at least Adam Haynes and "Kevin," constitute the requisite modest factual showing at the first step of collective action certification. *See, e.g., DeMarco,* 2011 WL 3510905 at *3 (grounding conditional FLSA certification in

- 11 -

evidence that nurses were frequently interrupted during their 30-minute meal periods with work-related tasks, that pressing the "cancel lunch" button was futile because it just "wasn't done," and that the named plaintiff made her managers aware of the problem). In addition, Plaintiffs sufficiently allege that Guardian's lunch policy is unlawful. All time which employers permit to be worked must be compensated. 29 U.S.C. §§ 206, 207. Regulations implementing the law provide that "[w]ork not requested but suffered and permitted is work time. . . . The reason is immaterial. The employer knows or has reason to believe that [an employee] is continuing to work and the time is working time." 29 C.F.R. § 785.11. It is the duty of management to see to it that work it does not want performed is not, in fact, performed. *See, Kellar v. Summit Seating Inc.,* 664 F.3d 169, 177 (7th Cir. 2011).

Defendants protest certification by insisting that "neither the installers nor the service representatives are instructed to work during their lunch period." (Defs.' Mem., Ex. 1 ¶ 15.) They adduce further evidence that employees wishing to work through lunch can seek prior approval and that Muir himself was appropriately paid. (*See, e.g., id.*, Ex. 3 ¶¶ 7-8.) But Muir's evidence cuts the other way, particularly in light of the evidence in his second affidavit (explored *infra*). At the very

least, the evidence points to a credibility dispute that the Court cannot resolve at this stage. Similarly, that Defendants may have paid some overtime, or paid overtime to those employees submitting affidavits, does "not negate the declarations in which [Muir] indicate[s] [he has] not been paid all the overtime [he is] owed." *Pieksma v. Bridgeview Bank Mortg. Co., LLC,* 2016 WL 7409909, at *6 (N.D. Ill. Dec. 22, 2016) (citing *Gomez v. PNC Bank, Nat'l Assn.,* 306 F.R.D. 156, 174 n.4 (N.D. Ill. 2014)). Plaintiffs have adduced evidence sufficient at the first stage of the § 216(b) process to demonstrate the existence of Guardian employees similarly situated with respect to meal break-related overtime claims.

## 2. Guardian's Transit Policy

Plaintiffs challenge a policy under which Guardian wrongfully "punches out" employees "upon the last job of the day and/or upon starting of the service vehicle at the end of the day, but before the Plaintiff and Collective have completed work and/or Plaintiffs and Collective travel from the work site." (Pls.' Mem. at 3.) Neither the briefs nor affidavits clarify how this policy is independent of the fourth challenged Guardian policy: failure to pay "for time spent commuting to job sites." (*Id.*) Indeed, Defendants treated Plaintiffs' challenge to these two policies under one heading, "The Use of Company Vehicle"

(Defs.' Mem. at 9-10), because they both implicate Guardian's transit rules with respect to its employees who use company cars. For purposes of Plaintiffs' Motion, the Court thus treats them as two facets of Guardian's larger policy governing compensable transit time.

To stave off a similarly situated finding, Defendants claim that their work policies for service representatives who, like Muir, opt to drive a company vehicle to and from their residences differ from those for installers and for those service representatives who report to the Guardian facility in the morning for their daily driver. Defendants claim that a representative who opts to drive a company vehicle to and from her residence is paid from the time of arrival on the first job site of the day until departure from the last job site. On the other hand, those who begin and end their day at the Guardian facility *are* paid for travel time spent in a Guardian service vehicle traveling to and from job sites. (Defs.' Mem. at 9-10.)

However, Plaintiffs' evidence either conflicts with Defendants' description or suggests that such a policy might nonetheless produce unlawful payment practices. In particular, Plaintiffs describe the transit policy as one under which Guardian "punches out" employees "upon starting of the service vehicle at the end of the day, but before the Plaintiff[s] and

Collective have completed work." (Compl. ¶¶ 1-2; Pls.' Mem. at 3 & Ex. 1 ¶¶ 12, 18, 28.) If Guardian clocks out service representatives who, like Muir, elect(ed) to drive a company car to and from their residence, then the policy Muir describes would at least be consistent with Defendants' characterization. But it might nonetheless undercompensate overtime work for these employees. If, on the other hand, Guardian does this even for installers and service representatives who do *not* drive a service vehicle home, as Plaintiffs' evidence suggests, then it contradicts Guardian's asserted policy. Thus, the record is unclear on the issue of how widely this "punching out" practice sweeps, and conditioning a similarly situated finding on distinctions in company car privileges (as Defendants seem to desire) would require the Court to make impermissible credibility determinations.

But that is not all. Muir's second affidavit establishes that at least some of his alleged overtime losses were not purely a function of Guardian's challenged lunch policy or "on call" policy (explored *infra*). During the pay period of September 6 through 12, 2016, Muir reported a total of 50.75 hours worked but was paid for only 44.5 hours of work – that is, he was "shorted" 6.25 hours of overtime pay. Muir points out that six lunch deductions of 30 minutes each would still have

only yielded 3 hours of pay deductions, not 6.25. (ECF No. 15 ("Pl.'s Reply"), Ex. 3, ¶¶ 9-20.) During the subsequent pay period of September 13 through 19, 2016, Muir reported a total of 47.75 hours on his time sheets but was paid for only 41.5 hours – again, he was "shorted" 6.25 hours of overtime pay. (On one of the time sheets during this period, Muir did in fact write "No Lunch.") Again, even a 30-minute deduction for lunch on each and every day cannot explain the discrepancy in his overtime pay. (*Id.* ¶¶ 21-36.) And, because Muir's cited pay discrepancies occurred in subsequent weeks, Defendants' own description of the "on call" policy means that it alone cannot account for the missing overtime hours.

Nor does the record permit an inference that Muir's pay was docked as an adjustment for his alleged propensity to engage in personal errands on company time in a company vehicle. For example, Defendant Andrea Lange states in her affidavit that the GPS system on company vehicles "is seldom used during the day unless we are looking to see who is the closest service representative to a next service need" but that, "as a result of this lawsuit, I began to review the GPS locations of Michael Muir as well as his time sheets and his work sheets." (Defs.' Mem., Ex. 10, ¶¶ 8-9.) If Guardian was contemporaneously unaware of issues with Muir's timekeeping, then the gripes to

which Defendants devote considerable ink cannot explain why his pay was docked as recounted in his second affidavit. The most logical explanation, then, is that Guardian's travel policy accounts for Muir's missing hours – because, for example, he made a habit of starting his company vehicle before completing all work on his last job site of the day.

Defendants principally justify Guardian's transit policy based on the Portal-to-Portal Act, arguing that it exempts from the FLSA's overtime mandate travel and commuting activities akin to those at issue. But that sacrifices the similarly situated issue at the altar of this case's ultimate merits. The application of an FLSA exemption, such as the one Defendants claim under the Portal-to-Portal Act, is an affirmative defense on which Defendants carry the burden of proof. *See, Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974); *Barefield v. Village of Winnetka,* 81 F.3d 704, 710 (7th Cir. 1996). Just as daily travel such as Muir's may well fall within the Portal-to-Portal Act, so too may certain activities on job sites that occur after a Guardian employee turns the ignition on her service vehicle. But the record before the Court at this early stage is too limited to make sweeping determinations about Guardian employees' principal activities. *See, e.g., Alexander v. Caraustar Indus., Inc.,* No. 11 C 1007, 2011 WL 2550830, at *2

(N.D. Ill. June 27, 2011) (granting conditional certification over the defendants' argument that time spent donning and removing protective gear was not compensable because the gear was not integral to the plaintiffs' principal activities). As is often the case, "[d]eciding whether the Portal-to-Portal Act applies . . . is premature since the Court will not make such merit determinations until extensive discovery has been completed by the parties." *Creal v. Group O, Inc.,* No. 13 C 4275, 2014 WL 1909481, at *3 (N.D. Ill. May 13, 2014) (citation omitted). Rather, all that is required at this stage of the proceedings "is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provisions of the FLSA." *Salmans v. Byron Udell & Asscs., Inc.,* No. 12 C 3542, 2013 WL 707992, at *5 (N.D. Ill. Feb. 26, 2013) (emphasis in original) (citations omitted).

Accordingly, Plaintiffs have adduced evidence sufficient at the first stage of the § 216(b) process to show similarly situated Guardian employees who possess overtime claims arising from Guardian's transit policy.

### 3. *"On Call" Phone Time*

Every sixth week, according to Defendants, a service representative is "on call," meaning that she must answer her company phone between the hours of 5:00 p.m. and 11:00 p.m. for

emergency service jobs. (Defs.' Mem. at 3, 10.) If the employee receives an assignment while "on call," she is compensated from the time of departure to the job from her home until her return back home. (*Id.* at 11.) As compensation for associated time spent on the phone, each "on call" representative is paid $50 for their designated week. (*Id.* at 10.) The cited portion of Defendant Robert Lange's affidavit does not define the extent of its application and only mentions this policy as applied to Muir. (*See, id.* at 10 (citing Ex. 1 ¶¶ 19-20).) Defendants aver that Muir was paid for overtime from the time he left home until his return home after completing an "on call" job. (*Id.* at 3.) Their brief acknowledges that the "on call" policy applies universally to service representatives, but denies that it applies to installers or office personnel. (*Id.* at 11.)

Plaintiff Muir's affidavit, on the other hand, avers broader application of Guardian's compensation policy for off-hours phone consulting. He first acknowledges that an "on call" employee's compensation only begins "when the employee takes the car on a service-call." (Pls.' Mem., Ex. 1 ¶ 26.) However, he states that, besides "hourly Service Techs," "[m]any other employees are forced to take a company phone home on off hours" and that Guardian's on call policy "is applied to all employees

taking the phone home." (*Id.* ¶¶ 25-27.) Plaintiffs' evidence therefore suggests that Guardian's "on call" policy is applied not just to service representatives but, most logically, also to installers, who share similar job duties of traveling in Guardian company cars to visit customers' heating/AC units. Muir's sworn statements, juxtaposed with the unsupported and conclusory statement in Defendants' brief, amount to a modest showing that Guardian installers are similarly situated to service representatives for purposes of the "on call" policy.

Irrespective of the scope of the "on call" policy, Defendants again content themselves with lodging a pure merits objection to conditional certification. They claim that the $50 Guardian pays per week to the "on call" individual only constitutes underpayment of overtime wages if she spends multiple hours per week on the telephone. (Defs.' Mem. at 10-11.) In fact, Defendants contend that $50 is more than adequate compensation for 30 "on call" hours during which an employee may or may not be required to work. (*See, id.* at 11 ("[W]hile on call, the employee was able to go about unrelated activities. . . . Although they were in fact compensated, and often without even answering a call.").)

Defendants' argument amounts in substance (if not in form) to a claim that any overtime owed to an employee for off-hours

time spent working on the phone, is sufficiently offset by payment of $50.  Such a fact-intensive question is neither here nor there, situated as we are at stage one of the certification analysis.  *See, e.g., Nehmelman v. Penn. Nat. Gaming, Inc.,* 822 F.Supp.2d 745, 757-58 (N.D. Ill. 2011) ("Plaintiff contends that whether such early out breaks can serve to 'offset' overtime payments is a merits issue not properly addressed at stage one of the certification analysis.  The Court agrees."); *Alexander v. Caraustar Indus., Inc.,* No. 11 C 1007, 2011 WL 2550830, at *2 (N.D. Ill. June 27, 2011) (finding "best left for later in the litigation" the defendants' argument that overtime worked by the plaintiffs was offset by a paid thirty-minute daily lunch period).  Also germane to Defendants' fact-intensive argument is *Allen v. City of Chicago,* No. 10 C 3183, 2013 WL 146389 (N.D. Ill. Jan. 14, 2013).  There, the court held that the "defendant's arguments regarding the variation in off-duty BlackBerry usage – including the possibility that the usage was no more than *de minimis* or was offset by 'rank credit' or other 'premium payments' under the CBA – is *[sic]* a matter of the proof of the merit, *vel non*, of plaintiff's claim." *Id.* at * 9 (citation omitted).  As in *Allen,* "[i]t is premature to consider those arguments at this time." *Id.*

As such, Defendants' twin arguments directed to Guardian's "on call" policy do not undercut Plaintiffs' modest factual showing that service representatives and installers are similarly situated. Both groups of employees were subjected to Guardian's uniform policy of not paying in accordance with the actual amount of off-hours time they spent on the phone attending to or preparing for emergency service needs.

*    *    *

In sum, Guardian's service representatives and installers are similarly situated because Plaintiffs have made a modest factual showing that both were victims of the challenged Guardian policies. Both sets of employees predominantly spend their days visiting and traveling between job sites to perform installations, maintenance, and other service work. They face similar pressures that may make electing to take (or seek approval for) a 30-minute lunch break impracticable. Because both types of employees drive company vehicles to job sites, they are similarly situated with respect to Guardian's alleged premature "punching out" of service employees upon their starting the engine of their vehicles (before completion of all job-related work). Further, Defendants have not adduced any evidence to counter Muir's sworn statements that other employees, such as installers, are similarly situated to service

representatives with respect to Guardian's alleged failure to compensate for time spent consulting on the phone. Finally, the Court notes the record's silence on differences between how the two sets of employees are compensated – indeed, Muir declares that both service representatives and installers are paid on an hourly basis. *Hudgins,* 2016 WL 7426135 at *4 (noting the importance of employees' compensation structure to a similarly situated finding).

Plaintiffs have at least made a modest factual showing that service representatives and installers share the "same essential responsibilities," and are thus similarly situated for purposes of the lunch, transit, and phone policies Plaintiffs challenge. *Hudgins*, 2016 WL 7426135 at *4; *Jirak,* 566 F.Supp.2d at 848. The facts are such that the Court "can 'envision a scenario' where [the plaintiffs] and potential collective action members are similarly situated." *Brand v. Comcast Corp.,* No. 12 C 1122, 2012 WL 4482124, at *5 (N.D. Ill. Sept. 26, 2012) (quoting *Persin v. CareerBuilder, LLC,* No. 05 C 2347, 2005 WL 3159684, at *1 (N.D. Ill. Nov. 23, 2005)). That suffices for conditional certification.

## B. Scope of the Collective

The Court may narrow the lead plaintiff's proposed opt-in class where the first-stage evidence provides no tangible

support for including certain employees. *See, e.g., DeMarco,* 2011 WL 3510905 at *4 (limiting certification to direct patient care providers). The Court grants in part Plaintiff's Motion to certify the requested opt-in class but excludes Guardian office staff from its purview.

It is certainly true that plaintiffs at the conditional certification stage need not show identical positions of potential opt-ins. Nor do distinctions in job titles, functions, or pay necessarily undermine an FLSA class. There is wide consensus that arguments about dissimilarities in the class are more appropriately decided at step two, after the composition of the class is known and discovery has unpacked some of the factual issues. *See, Jirak,* 566 F.Supp.2d at 850 (citation omitted). For these reasons, the Court is willing to treat service representatives and installers as similarly situated despite some variation in their job duties and company car privileges. *See, Petersen,* 2010 WL 5423734 at *7 (finding rigorous comparisons of daily responsibilities inappropriate).

However, all putative opt-in members must still be victims of the same common policy or policies; otherwise, the "proposed class is overbroad." *DeMarco,* 2011 WL 3510905 at *4. In this case, Plaintiffs have failed to "raise even a permissible inference that similar conditions were faced by employees not

focused directly on" servicing customers at job sites. *Id.* Put simply, office staff do not experience work conditions necessitating floating or discretionary lunch breaks, working on job sites, or responding to emergency service requests while "on call." Nothing supports the notion that office staff ever perform itinerant work outside the office, drive company vehicles, or work on job sites. Similarly, because the only particulars in Plaintiffs' phone policy evidence relate to in-person emergency service calls, Plaintiffs fall short of a modest factual showing that office staff were victims of Guardian's "on call" policy or otherwise were shorted overtime based on uncompensated call time. Other than liberal use of the term "all employees," nothing in Muir's affidavit sustains a modest factual showing that office staff are similarly situated for purposes of the challenged policies.

As such, the Court modifies the proposed collective as follows:

> All service representatives and installers shorted overtime wages based on Guardian's lunch break policy, its transit policy of under-compensating work performed at day's end and/or time spent commuting to job sites, or its policy of refusing to pay for off-hours time spent consulting on the phone.

### C. Equitable Tolling

Plaintiffs ask that the statute of limitations be tolled to allow those whose claims would otherwise be time-barred to opt

in to the collective. (*See,* Pls.' Mem. at 12.) Equitable tolling may be appropriate if a plaintiff shows (1) diligence in pursuing her rights and (2) that some extraordinary circumstance prevented timely filing. *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1931-32 (2013) (quotation omitted). The doctrine should be used sparingly. *See, Wilson v. Battles,* 302 F.3d 745, 749 (7th Cir. 2002).

In this case, Plaintiffs have provided the Court with no facts or argument setting forth such extraordinary circumstances. Indeed, neither party briefed the issue. The Court therefore denies Plaintiffs' request for equitable tolling without prejudice "to refile a motion, setting out specific factors as individual cases factually warrant." *Ries v. Planesphere, Inc.,* No. 16 C 3667, 2016 WL 6277466, at *3 (N.D. Ill. Oct. 27, 2016).

## D.  Notice

Having determined that conditional certification is appropriate, the Court considers Plaintiffs' request for limited discovery of potential opt-ins' identities and contact information and for Court-facilitated notice. Specifically, Plaintiffs request that the Court order Defendants to produce the full names and the last known work and home addresses, email addresses, phone numbers, and date(s) of employment for all

potential opt-ins.  Plaintiffs ask the Court to approve a notice based on a form to be submitted by the parties and to approve transmittal of the notice via U.S. mail, website, posted message at Guardian's work site, email, and text message.  (Mot. at 2; Pls.' Mem. at 12.)  Plaintiffs also request an opt-in period of ninety (90) days after the notice has been circulated.  Other than importuning the Court to deny Plaintiffs' Motion, Defendants do not contest any feature of the requested discovery or notice.

It is common practice to grant a request for potential plaintiffs' names, phone numbers, and physical addresses.  *See, e.g., Boltinghouse v. Abbot Labs., Inc.,* 196 F.Supp.3d 838, 844 (N.D. Ill. 2016).  Email addresses are also standard fare.  *See, e.g., Nehmelman,* 822 F.Supp.2d at 767; *Girolamo v. Community Physical Therapy & Asscs., Ltd.,* 2016 WL 3693426, at *5-6 (N.D. Ill. July 12, 2016).  With respect to the final piece of personal data sought, dates of employment, this information is also discoverable upon a grant of conditional certification.  *See, e.g., Girolamo,* 2016 WL 3693426 at *6.  To the extent Defendants have privacy concerns, "[a] protective order limiting the use of this information to its intended purpose will adequately address [them]."  *Russell,* 575 F.Supp.2d at 939.

Notice via U.S. mail and a posting in an employee-only section of a subject facility are "classic" means of apprising potential opt-in plaintiffs of an FLSA action. *Ries,* 2016 WL 6277466 at *3; *Blakes v. Ill. Bell Tel. Co.,* No. 11 C 336, 2011 WL 2446598, at *10 (N.D. Ill. Jun. 15, 2011) (authorizing the posting of notice "wherever other employment related postings are placed"). District courts are split, however, on the question whether e-mail notice is appropriate in FLSA collective actions. *See, Boltinghouse,* 196 F.Supp.3d at 844 (collecting cases). Given email's ubiquity as a means of communication, the Court concludes that additional notice by email is "likely to advance the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice." *Id.* at 844 (internal quotation marks omitted); *see also, Pieksma,* 2016 WL 7409909 at *6; *Watson v. Jimmy John's, LLC,* 15 C 6010, 2016 WL 106333, at *1 (N.D. Ill. Jan. 5, 2016) ("[A]llowing email notice will facilitate, rather than complicate, the notice process."). Mindful of "the [undesirable] potential for recipients to modify and redistribute email messages," *Espenscheid v. DirecStat USA, LLC,* No. 09 C 625, 2010 WL 2330309, at *14 (W.D. Wis. Jun. 7, 2010), the Court requires that the notice be emailed as a .pdf attachment rather than included in the body of the email message

sent to potential opt-ins.  *See, Boltinghouse,* 196 F.Supp.3d at
844.

Plaintiffs also request notice in two additional forms:
via a website and text message.  Plaintiffs have cited no case
law from this circuit authorizing such forms of notice in a
collective action.  In fact, Plaintiffs' counsel recently and
unsuccessfully argued for the same in a sister court.  *See,
Ries,* 2016 WL 6277466 at *3 (denying request for notice via text
message).  Nor have Plaintiffs offered any reason for thinking
that the added cost of such forms of notice would be justified.
Rather than adding value by reaching potential opt-ins beyond
those reached by email, additional notice via website and text
message is more likely to duplicate email notification.  These
forms of notice are simply too scant of authority and too likely
to impose unwarranted added costs to be imposed here.

Under 29 U.S.C. § 255, a cause of action arising out of a
willful violation of the FLSA must be commenced within three
years after the cause of action accrued.  Here, Plaintiffs
allege that Defendants' violations were willful, thus justifying
a three-year statute of limitations.  *See,* 29 U.S.C. § 255(a);
*Salmans,* 2013 WL 707992 at *6.  An opt-in FLSA plaintiff is
deemed to have commenced her claim when she files notice of
consent to join the collective action.  *Harkins v. Riverboat*

*Servs., Inc.,* 385 F.3d 1099, 1101-02 (7th Cir. 2004). As such, the Court authorizes notice to those installers and service representatives who worked for Guardian within the three years preceding the date on which notice is sent. *See, Salmans,* 2013 WL 707992 at *6. In the absence of tolling, only these individuals are eligible to join the collective.

Finally, the length of the notice period shall be sixty (60) days instead of the ninety (90) days Plaintiffs request. Although courts in this circuit have approved opt-in periods ranging from 45 to 120 days, "the relatively small number of potential class members who worked as [service representatives] and [installers] at this single [facility] during a three-year period" militates in favor of a 60-day opt-in period. *Nehmelman,* 822 F.Supp.2d at 764-65.

The Court invites the parties to meet and confer in an effort to formulate a notice document that accords with the Court's rulings herein.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, the Court grants Plaintiffs' Motion in part as follows:

1.  the conditionally certified collective is defined as: All service representatives and installers shorted overtime wages based on Guardian's lunch break policy, its transit policy

of under-compensating work performed at day's end and/or time spent commuting to job sites, or its policy of refusing to pay for off-hours time spent consulting on the phone;

2.   the Court directs Defendants to provide Plaintiffs, by no later than March 27, 2017, the names and the last known addresses, phone numbers, email addresses, and dates of employment for all potential opt-ins;

3.   the Court authorizes Plaintiffs to transmit the notice and consent form by U.S. mail, email, and a posting in an employee-only area of Guardian's facility where notices are typically displayed;

4.   the Court denies Plaintiffs' request for notice via website and text message;  and

5.   the opt-in period shall be sixty (60) days from the date notice is mailed and posted.

**IT IS SO ORDERED.**

_____
                 Harry D. Leinenweber, Judge
                 United States District Court

Dated:    03/13/17